USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 93-2317 UNITED STATES OF AMERICA, Appellee, v. CHRISTOPHER LEE BOOT, Defendant, Appellant. __________________ ERRATA SHEET The opinion of this Court, issued June 7, 1994, is amended as follows: Page 4, n.1, last line should read: . . . comment. (backg'd.). Page 7, l.5 from bottom should read: . . . comment. (backg'd.). UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2317 UNITED STATES OF AMERICA, Appellee, v. CHRISTOPHER LEE BOOT, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Richard S. Emerson, Jr., with whom Childs, Emerson, Rundlett, _________________________ ___________________________ Fifield & Childs was on brief for appellant. ________________ Michael M. DuBose, Assistant United States Attorney, with whom __________________ Jay P. McCloskey, United States Attorney, was on brief for appellee. ________________ ____________________ June 7, 1994 ____________________ CYR, Circuit Judge. After the district court reduced CYR Circuit Judge ______________ its original sentence in response to a recent amendment to the Sentencing Guidelines, see United States Sentencing Commission, ___ Guidelines Manual 2D1.1 (Nov. 1993), defendant Christopher Lee _________________ Boot brought the present appeal challenging the court's concur- rent refusal to reduce his prison term below the minimum mandated by statute. Finding no error, we affirm. I I BACKGROUND BACKGROUND __________ Appellant Boot pled guilty to distributing 11.6 grams of lysergic acid diethylamide (LSD) within 1000 feet of a school. See 21 U.S.C. 841(a)(1); 860(a) (1993). For purposes of ___ determining both the statutory mandatory minimum sentence ("MMS"- ), see id. 841(b)(1)(B)(v) (prescribing five-year MMS for ___ ___ distributing "1 gram or more of a mixture or substance containing a detectable amount" of LSD), and the applicable Guidelines sentencing range (GSR), see U.S.S.G. 2D1.1(c) (Nov. 1991), the ___ district court included the entire weight of the carrier medium used to distribute the 599 doses of LSD. See Chapman v. United ___ _______ ______ States, 500 U.S. 453, 468 (1991) (broadly construing "mixture or ______ substance," in 21 U.S.C. 841(b)(1)(B)(v), as "requir[ing] the weight of the carrier medium to be included"); U.S.S.G. 2D1.1, footnote * (Nov. 1991) ("Unless otherwise specified, the weight of a controlled substance set forth in the [Drug Quantity Table] 3 refers to the entire weight of any mixture or substance contain- ing a detectable amount of the controlled substance."); id., ___ comment. (backg'd.). (n.1) (Nov. 1991) ("'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. 841."). As a result, the 121-month prison term originally imposed under the Guidelines (BOL: 32; CHC: I; GSR: 121-151 months) trumped the five-year MMS required under 21 U.S.C. 841(b)(1)(B)(v) for distributing one gram or more of LSD. See ___ U.S.S.G. 5G1.1(c). Effective November 1993, however, the Sentencing Commission amended U.S.S.G. 2D1.1 ("Amendment 488"), see 28 ___ U.S.C. 994(p) (empowering Commission to promulgate amendments to U.S.S.G., subject only to express congressional "veto"), by prescribing a somewhat less stringent (0.4 milligram "per dose") formula for calculating LSD quantity than the regime upheld in Chapman.1 The Commission has ordained that its new 0.4 milli- _______ ____________________ 1The Commission spelled out the competing policy goals addressed by Amendment 488 in new application note 18: Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has deter- mined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of LSD (but different carrier weights), as well as sen- tences disproportionate to those for other, more dan- gerous controlled substances, such as PCP. Consequent- ly, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level. 4 gram per-dose formula may receive retroactive application in appropriate circumstances to effect reductions in sentences previously imposed. See U.S.S.G. 1B1.10(a), (d) (1993); 18 ___ U.S.C. 3582(c)(2); United States v. Holmes, 13 F.3d 1217, 1222 _____________ ______ (8th Cir. 1994) (district courts have discretion to apply Amend- ment 488 retroactively in appropriate circumstances).2 ____________________ The dosage weight of LSD selected exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05 milligram (i.e., the quantity of actual LSD ____ per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in Chapman v. United _______ ______ States, 111 S. Ct. 1919 (1991) (holding that the term ______ "mixture or substance" in 21 U.S.C. 841(b)(1) in- cludes the carrier medium in which LSD is absorbed). At the same time, the weight per dose selected is less than the weight per dose that would equate the offense level for LSD on a carrier medium with that for the same number of doses of PCP, a controlled substance that comparative assessments indicate is more likely to induce violent acts and ancillary crime than is LSD. (Treating LSD on a carrier medium as weighing 0.5 milligram per dose would produce offense levels equiva- lent to those for PCP.) Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled sub- stances and avoid any undue influence of varied carrier weight on the applicable offense level. U.S.S.G. 2D1.1, comment. (n.18). 2Section 3582 provides, in pertinent part: The court may not modify a term of imprisonment once it has been imposed except that .... 5 Absent the MMS complication posed by 21 U.S.C. 841(b)(1)(B)(v), Amendment 488 would have resulted in a dramat- ic decrease in appellant's prison sentence, since it sliced the GSR from 121-151 months (11.6 grams of LSD) to 27-33 months (0.239 gram). Due to 21 U.S.C. 841(b)(1)(B)(v), however, the district court refused to reduce Boot's prison term below the five-year MMS. See U.S.S.G 5G1.1(b) ("Where a statutorily ___ required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guidelines range."). II II DISCUSSION DISCUSSION __________ The long and the short of the district court ruling was that the LSD quantity calculation is controlled by Chapman for _______ MMS purposes and by Amendment 488 for GSR purposes. Boot coun- ____________________ (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentenc- ing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such reduction is consistent with applicable policy statements issued by the Sen- tencing Commission. 18 U.S.C. 3582(c)(2). 6 ters that by permitting Amendment 488 to take effect without modification in November 1993, Congress evinced its clear inten- tion to establish a unitary per-dose "mixture and substance" _______ formula for calculating LSD weight in MMS and GSR sentencings alike. Thus, unless Amendment 488 is to be converted into an instrument for promoting sentencing disparity, congressional acquiescence in its adoption must be considered tantamount to legislative displacement of the Chapman regime. We do not _______ agree.3 Although the precise issue presented is one of first impression in the courts of appeals,4 the Supreme Court in Chapman concluded that Congress intended, at the time it enacted _______ __ ___ ____ __ _______ ____________________ 3Contrary to Boot's contention, Amendment 488, as presently interpreted, eliminates considerable past and future sentencing __________ disparity in LSD cases, see U.S.S.G. 2D1.1, comment. (n.18), by ___ substituting, in all non-MMS cases, a uniform 0.4 milligram per- dose formula for calculating the LSD "mixture or substance" weight in place of the entire actual weight of the LSD and its carrier medium. See supra note 1. The very substantial 61-month ___ _____ reduction in Boot's sentence underscores the point. Further efforts at reducing sentencing disparity in LSD cases must await improved coordination between Amendment 488 and its preemptive counterpart the MMS regime long recognized as an "ad hoc deviation" from the unitary policy goals of the Sentencing Guidelines, United States v. McFadden, 13 F.3d 463, 468 (1994) ______________ ________ (Breyer, C.J., dissenting). 4No district court has yet adopted the unitary approach advocated by Boot. See United States v. Reddick, ___ F. Supp. ___ _____________ _______ ___, ___ (W.D.N.Y. 1994) [1994 U.S. Dist. LEXIS 5978, at * 15 (W.D.N.Y. Apr. 20, 1994)]; United States v. Neal, ___ F. Supp. _____________ ____ ___, ___ (C.D. Ill. 1994) [1994 U.S. Dist. LEXIS 4101, at * 3-4 (C.D. Ill. Mar. 29, 1994)]; Woolston v. United States, 840 F. ________ ______________ Supp. 1, ___ (D. Me. 1993). Cf. United States v. Tucker, ___ ___ _____________ ______ F.3d ___, ___ (7th Cir. 1994) [1994 U.S. App. LEXIS 5408, at * 6- 7 (7th Cir. Mar. 23, 1994)]. 7 the MMS statute in 1986, see Anti-Drug Abuse Act of 1986, Pub. L. ___ ___ _______ __ ____ ___ 99-570, 100 Stat. 3207 (1986), that the pivotal term "mixture or substance containing a detectable amount" of controlled substance required the sentencing court to include the entire weight of the ______ ______ LSD and its carrier medium. Chapman, 500 U.S. at 461 ("Congress ___ _______ adopted a 'market-oriented' approach to punishing drug traffick- ing," and intended courts to sentence defendants "according to the weight of the drugs in whatever form they were found cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level."). III III CONCLUSION CONCLUSION __________ Until the Supreme Court or the Congress revisits the issue, Chapman governs the meaning of the term "mixture or _______ substance" in 21 U.S.C. 841(b)(1)(B)(v), as the Commission itself acknowledged when it promulgated Amendment 488 in November 1993: "Nonetheless, this [new Guidelines] approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (see Chapman; ___ _______ 5G1.1(b))." U.S.S.G. 2D1.1, comment. (backg'd.). (n.18). Without more and there is no more we conclude that Con- gress simply acquiesced in the restrictive reach of Amendment 488 duly noted by the Commission in application note 18. Id. ___ 8 Affirmed. Affirmed. ________ 9