UNITED STATES of America, Appellee,

v.

Robert James STONEKING, Appellant.

No. 94–1236.

United States Court of Appeals,
Eighth Circuit.

Submitted July 25, 1994.

Decided Sept. 6, 1994.

Order Granting Rehearing En Banc and
Vacating Opinion Sept. 16, 1994.

Dean Stowers, Des Moines, IA, argued, for appellant.

Lester A. Paff, Des Moines, IA, argued, for appellee.

Before FAGG, WOLLMAN, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Robert James Stoneking appeals the district court's refusal to reduce his sentence under a retroactive amendment to the United States Sentencing Guidelines. We reverse and remand for resentencing.

## I. BACKGROUND

Stoneking was indicted on four counts of distribution of lysergic acid diethylamide (LSD), a Schedule I controlled substance. Under a plea agreement, he entered a plea of guilty to one count of conspiracy to distribute LSD in violation of 21 U.S.C. § 846. In the plea agreement, he admitted that he had conspired to distribute LSD weighing more than ten grams, including its carrier medium, blotter paper.[1] Under 21 U.S.C. § 841(b)(1)(A)(v), a mandatory minimum sentence of ten years is imposed for a drug offense involving more than ten grams of LSD. The plea agreement acknowledged that the offense carried that statutory minimum sentence. The district court initially imposed a sentence of ten years in conformity with the mandatory minimum.

Later, on motion of the United States, the district court reduced Stoneking's sentence to seventy-two months for substantial assistance to the government. The motion to reduce encompassed the downward departures contemplated by both USSG § 5K1.1 and 18 U.S.C. § 3553(e).

1. The Presentence Report (PSR) stated that the actual combined weight of the pure LSD and the blotter paper was 10.54 grams.

Still later, the Guidelines provision that determines the calculation of the amount of LSD involved in a drug offense was modified by Amendment 488. *See* USSG § 2D1.1(c) (1993). At the time of Stoneking's original sentencing, the Guidelines directed that "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." USSG § 2D1.1(c) (Drug Quantity Table) (1992). The new provision alters the method of determining the weight of pure LSD and its carrier medium for sentencing purposes. Amendment 488 now instructs that "[i]n the case of LSD on a carrier medium (*e.g.*, a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table." USSG § 2D1.1(c) (1993). A typical single dose of pure LSD is estimated to weigh .05 mg. *See* USSG § 2D1.1, comment. (n. 10) (Typical Weight Per Unit Table) (1990).

On its own motion, the district court requested briefing from the parties on whether the amended guideline should result in a further reduction in Stoneking's sentence. Information from the probation office showed that Stoneking had been responsible for distribution of 1773 dosage units of LSD. Under the new guideline, the number of dosage units is to be multiplied by .4 mg, resulting in a recalculated weight of 709 mgs.[2] The district court thus determined that recalculation of the sentence under the amendment would

result in a Guideline incarceration range of thirty-three to forty-one months. After consideration of the arguments of the parties, the district court declined to reduce Stoneking's sentence through recalculation of the weight of the LSD under Amendment 488.[3] The district court found that "since the defendant would have been subject to the statutory minimum sentence contained in 21 U.S.C. § 841(b)(1)(a), the defendant is still subject to a 120 month sentence and the amended guideline provides no basis for relief from that mandatory minimum sentence."

## II. DISCUSSION

 The district court's finding effectively holds that Amendment 488 conflicts with 21 U.S.C. § 841 and thus has no applicability to a case involving a mandatory minimum sentence for distribution of LSD.[4] We do not agree. Analysis of this issue involves examination of the interplay between mandatory minimum statutes and the Sentencing Guidelines. Of course, when a statute and a Guideline conflict, the statute controls. *See, e.g.*, USSG § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable Guideline range, the statutorily required minimum sentence shall be the Guideline sentence.") Here, we believe it possible and prudent to find that the Guideline and the statute do not conflict. The statutory minimum sentence is determined by weight of the controlled substance. The calculation of the weight is determined with reference to the Guidelines.

---

**2.** There is apparently an arithmetical error in the district court's calculation. The district court arrived at a figure of 609 mgs. The error is of no consequence since both figures are less than 10 grams.

**3.** However, the district court did reduce Stoneking's sentence to sixty months to ensure uniformity in departure for substantial assistance among the several participants in the conspiracy. This reduction is of no import to this appeal.

**4.** Stoneking argues that, notwithstanding the mandatory minimum, the district court is free to further reduce his period of imprisonment under the new amendment because the 120–month barrier has already been broken by the earlier departure, and has thus been waived. The district

court rejected this contention and we agree with its analysis. As noted by the district court, downward departure under 18 U.S.C. § 3553(e) and USSG § 5K1.1 is specifically based upon "substantial assistance." The applicable language in these sections contemplates no other basis for a sentence reduction. Thus, the district court could find no authority under the statutes and Guidelines to piggyback the weight calculation amendment onto the reductions for substantial assistance. Neither can we.

However, we do not feel that resolution of this issue is dispositive since the district court first found the mandatory minimum applicable to Stoneking before addressing the waiver argument. The effect, if any, of Amendment 488 on Stoneking's mandatory minimum sentence is the heart of the dispute in this case.

Section 841(b)(1)(A)(v) imposes a mandatory minimum sentence for conviction of a drug offense involving more than ten grams of a "mixture or substance containing a detectable amount of [LSD]." In *Chapman v. United States,* 500 U.S. 453, 468, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991), the Supreme Court construed "mixture or substance" in that statute as "requir[ing] the weight of the carrier medium to be included. . . ." Because, at the time *Chapman* was decided, neither the statute (section 841) nor the Guidelines defined the words "mixture" or "substance," the Supreme Court applied the dictionary meaning of those words. *Id.* at 462, 111 S.Ct. at 1925. The Supreme Court's definition of "mixture" and "substance" depends on the LSD being "commingled" with its carrier medium (most commonly paper or sugar cubes) and "blended together so that the particles of one are diffused among the particles of the other." *Id.* In this way, the Court dispensed with the "nonsense" of including the weight of a glass jar containing the LSD or a car in which it is transported. *Id.* at 462–63, 111 S.Ct. at 1925–26. There, "[t]he drug is clearly not mixed with a glass vial or automobile; nor has the drug chemically bonded with the vial or car."[5] *Id.* at 463, 111 S.Ct. at 1926.

*Chapman's* holding was based, in part, on the Sentencing Guidelines as they existed at that time. As noted, the Guidelines then provided that "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."[6] USSG § 2D1.1(c) (Drug Quantity Table) (1990). The Supreme Court relied on the Sentencing Guidelines as a rational sentencing scheme to lend support to its holding that including the weight of the carrier medium did not violate due process. *Chapman,* 500 U.S. at 465 & n. 5, 111 S.Ct. at 1927 & n. 5.

We view Amendment 488 as a response to the anomalies presented in the *Chapman* approach. The amendment clarifies the amount of carrier medium that we can attribute as "mixed" with the pure drug. The background notes to Amendment 488 state that the amended approach "does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b))." USSG § 2D1.1, comment. (backg'd) (1993). Far from "overriding" the applicability of *Chapman's* "mixture or substance" approach, Amendment 488 merely provides a uniform methodology for calculating the weight of LSD and its carrier medium—the "mixture" or "substance" containing a detectable amount of LSD.

After noting that the amended approach assigns a weight value to the carrier medium eight times the actual weight of the pure drug, the Commission further explains that

> the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in *Chapman v. United States,* [500 U.S. 453,] 111 S.Ct. 1919 [, 114 L.Ed.2d 524] (1991) (holding that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed).

USSG § 2D1.1, comment. (1993). Thus, the Commission expressly recognizes the impact of *Chapman* on the weight calculation. Since *Chapman* deals only with mandatory minimum sentences, the intent of the new amendment must have been, at least in part, to conform sentences under both the statute and the Guidelines.

We thus find that Amendment 488 and Section 841 can and should be reconciled under *Chapman.*[7] The amendment comports

---

5. Under this approach, one could conceivably argue that, if a vial of LSD spilled on the seat of a Buick and the drug was absorbed by the upholstery fabric, the entire weight of the Buick could be used to calculate the sentence. Such a result is, of course, preposterous.

6. In short, the language of the Guidelines with respect to LSD weight calculation parroted the language of the mandatory minimum statute. With the advent of Amendment 488, such is no longer the case.

7. We realize our holding is at odds with the First Circuit. *See United States v. Boot,* 25 F.3d 52

with the *Chapman* mandate: *Chapman* compels consideration of the carrier medium in calculating the weight of LSD for sentencing; Amendment 488 defines the amount of the weight of the carrier to be included. By assigning a sentencing weight per dose that is eight times the actual weight of the pure drug, the Sentencing Commission has determined, in effect, that .05 mg of LSD can be absorbed in, or chemically bonded with, a carrier eight times its weight. Thus, Amendment 488 remains true to the *Chapman* mandate that the weight of the carrier must be included if the carrier can be said to be bonded with or mixed with the drug.[8]

Amendment 488 does no more than assign a rational and uniform weight to that portion of the carrier that can be said to be bonded with or mixed with the drug. The amendment satisfies *Chapman's* requirements while promoting the sentencing uniformity Congress sought to achieve when it authorized the Sentencing Guidelines. The amended guideline, in conjunction with *Chapman*, eliminates the disparities in sentencing between, for example, drug traffickers who use blotter paper as a medium and those who use sugar cubes as a medium. The amendment also maintains the "market-oriented" approach, under which the total quantity of drugs distributed, rather than the amount of pure drug sold, is used to determine the length of the sentence. *See Chapman*, 500 U.S. at 461, 111 S.Ct. at 1925.

We note that the Supreme Court in *Chapman* was presented only with the choice between using the net weight of the pure LSD, which the Court characterized as infinitesimal in a typical dose of LSD, and the gross weight of the pure drug and its carrier medium to calculate a sentence. *Id.* at 457, 459, 111 S.Ct. at 1923, 1924. Faced with that choice, the Court could only choose the gross weight, in keeping with the fact that the weights of other drugs include dilutants and cutting agents, and in keeping with the market-oriented approach adopted by the Guidelines. *Id.* at 465–67, 111 S.Ct. at 1927–28. Although the Court acknowledged the anomalies present in its approach, *id.* at 458 n. 2, 111 S.Ct. at 1923 n. 2, the Court did not have the option (which Amendment 488 now provides) of using an assigned rational weight. That issue was not presented in *Chapman*.

We are mindful that courts should "normally try to read language in different, but related, statutes, so as best to reconcile those statutes, in light of their purposes and of common sense." *United States v. McFadden*, 13 F.3d 463, 467 (1st Cir.1994) (J. Breyer, dissenting). This is especially true with respect to the Sentencing Guidelines and the related mandatory minimum statutes. As Judge (now Justice) Breyer stated:

> one relevant statute, the statute creating the Sentencing Guidelines, reflects a major congressional effort to create a fairly sophisticated Sentencing Guidelines system that distinguishes among different kinds of criminal behavior and punishes accordingly. The other statute, the mandatory minimum statute, represents an ad hoc deviation from that more general policy. Given the importance (to Congress) of the Guidelines system, *see Mistretta v. United States*, 488 U.S. 361, 363–370 [, 109 S.Ct. 647, 650–653, 102 L.Ed.2d 714] (1989), courts should take care not to interpret other statutes that represent ad hoc deviations from the basic congressionally-directed effort to rationalize sentencing with *unnecessary* breadth.

*Id.* at 467–68 (emphasis in original). We must take care not to interpret language in statutes to unnecessarily "swallow up" a guideline that distinguishes, for punishment

---

(1st Cir.1994). However, we believe that the analysis by the First Circuit in *Boot* is flawed. The First Circuit places undue emphasis on the statement that "[n]onetheless, this [new Guidelines] approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence" while ignoring language (acknowledging *Chapman's* mandate) which modifies that statement. *Id.* at 54 n. 1, 55. *See supra* at 6. The *Boot* opinion ignores the Sentencing Commission's express recognition of, and reliance on, the *Chap-*

*man* mandate. USSG § 2D1.1, comment. (backg'd).

8. With respect to the statement in *Chapman* that "[s]o long as it contains a detectable amount, the *entire* mixture or substance is to be weighed," *Chapman*, 500 U.S. at 459, 111 S.Ct. at 1924 (emphasis added), we find that "entire mixture" should logically be read to mean "the drug and any carrier it is chemically bonded to" (i.e., a substance eight times the weight of the pure drug).

purposes, among different kinds of drug-related criminal behavior. *Id.* at 468.

To calculate mixture weights differently for mandatory minimum sentences on one hand and Guideline sentences on the other would unnecessarily swallow up the guideline, which, itself, demands a very significant sentence. Applying two different measurements makes no sense. Accordingly, we find that Stoneking's sentence may be reduced under a retroactive application of Amendment 488.

■ The Guidelines permit, but do not mandate, retroactive application of this amended provision to a previously sentenced individual. *United States v. Coohey,* 11 F.3d 97, 101 (8th Cir.1993). Because it is not clear to us whether the district court simply declined to exercise its discretion in favor of Stoneking or felt constrained by its interpretation of *Chapman* to rule the way it did, we remand to the district court to determine, in its discretion, whether Amendment 488 should be applied retroactively to reduce Stoneking's sentence.

We have also considered the other arguments advanced by appellant. We find them to be without merit.

## III. CONCLUSION

For these reasons, we reverse the judgment of the district court and remand for resentencing in accordance with this opinion.

Sept. 16, 1994

On the court's own motion, petition for rehearing by the court en banc is ordered. *See* Eighth Circuit Rule 35A(b). The panel's opinion and judgment filed September 6, 1994, 34 F.3d 651, are vacated.

The Clerk is directed to set this case on the calendar for oral argument before the court en banc on December 6, 1994, at 9:00 a.m. in St. Louis, Missouri.