UNITED STATES of America, Plaintiff–Appellee,

v.

Richard Lee MUSCHIK, Defendant– Appellant.

No. 93–30461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Feb. 28, 1995.

---

**513**

William M. Brooke, Moore, O'Connell & Refling, Bozeman, MT, for defendant-appellant.

Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff-appellee.

Before: WOOD, Jr.,* HUG, and TANG, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

Following the Ninth Circuit's remand, Richard Lee Muschik was resentenced on December 6, 1993, to a prison term of twenty years pursuant to the mandatory minimum sentence set forth in 21 U.S.C. § 841(b)(1)(A). Muschik had been earlier found guilty of escape in violation of 18 U.S.C. § 751 and pleaded guilty to conspiracy to distribute lysergic acid diethylamide ("LSD") in violation of 21 U.S.C. §§ 841(a)(1) and 846. In his appeal, Muschik argues that the district court erroneously concluded that ten grams or more of LSD were involved in this case. Muschik contends that the entire weight of the carrier medium should not be included when the weight of LSD is calculated. Instead, Muschik argues that the formula set forth in the November 1, 1993 amendment to U.S.S.G. § 2D1.1(c) should be used to determine the net weight of LSD involved for sentencing purposes. For the reasons given below, we vacate the sentence imposed by the district court and remand for resentencing in accordance with this opinion.

## I.

## BACKGROUND

Richard Lee Muschik was arrested on May 24, 1991, by the Drug Enforcement Administration ("DEA") pursuant to a Complaint charging him with conspiracy to possess with intent to distribute and actual distribution of LSD in violation of 21 U.S.C. §§ 841(a)(1) and 846. On October 23, 1991, Muschik escaped from federal custody while awaiting trial on the drug charges. Muschik was apprehended again on November 28, 1991, and detained. On January 28, 1992, Muschik was convicted of escape in violation of 18 U.S.C. § 751.

On March 12, 1992, Muschik pleaded guilty to conspiracy to distribute LSD in violation of 18 U.S.C. §§ 841(a)(1) and 846. On May 26, 1992, the district court combined the escape and drug charges for sentencing and then determined that the amount of LSD involved required application of the mandatory minimum provision of 21 U.S.C. § 841(b)(1)(A). Pursuant to this statute, and in light of Muschik's prior state felony drug conviction, Muschik was sentenced to a term of twenty years.

Muschik appealed these convictions and the sentence. We affirmed the escape and drug convictions, but vacated the district court's sentence and remanded for resentencing in strict compliance with the inquire and inform provisions of 21 U.S.C. § 851(b) regarding the enhancement of Muschik's sen-

---

* The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, is sitting by designation.

tence for recidivism. *United States v. Muschik*, 995 F.2d 234 (9th Cir.1993).

Prior to the district court's resentencing, the U.S. Sentencing Commission amended the Sentencing Guidelines and changed the manner in which the weight of LSD is calculated for sentencing purposes. U.S.S.G. § 2D1.1(c) (1993) (as amended by U.S.S.G. app. C, amend. 488 (1993)) ("Amendment 488"). Under the prior method, which includes the entire weight of the carrier medium, it was determined that Muschik possessed 101 grams of LSD. In preparation for resentencing, the United States Probation Office recalculated the weight of this LSD under the amended guidelines, which establish a standard weight of 0.4 milligram per dosage of LSD, and arrived at a weight of 5.68 grams.

On December 6, 1993, the district court nevertheless resentenced Muschik to a term of twenty years—a term of the same length as it had imposed originally. Muschik appeals.

## II.

## ANALYSIS

■ We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Conkins*, 987 F.2d 564, 571 (9th Cir.1993). The district court's other legal determinations in this regard are also reviewed *de novo*. *United States v. Anderson*, 895 F.2d 641, 644 (9th Cir.1990). To the extent that the district court has made any factual determinations, the clearly erroneous standard applies. *Id.*

1. In relevant part, § 841(a) provides:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

Muschik actually pleaded guilty to conspiracy to distribute LSD in violation of 21 U.S.C. § 846, but that section states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## A.

Title 21 U.S.C. § 841(b)(1)(A)(v) imposes a mandatory minimum sentence of ten years imprisonment for a violation of § 841(a)[1] where there is involved "10 grams or more of a mixture or substance containing a detectable amount" of LSD. Section 841(b)(1)(B)(v) imposes a mandatory minimum sentence of five years imprisonment where there is involved "1 gram or more of a mixture or substance containing a detectable amount" of LSD. Both sections provide for a doubling of the mandatory minimum sentence where the defendant has one or more prior felony drug convictions. Thus, it is obvious that properly determining the weight of LSD involved in a given case is of paramount importance for sentencing purposes.

The calculation of LSD weight is difficult, however, because the quantity of the actual drug present in each dose is infinitesimal—the DEA assigns a standard weight for LSD of only 0.05 milligram per dosage unit. To facilitate transportation, distribution and use of LSD, it is commonly dissolved in solvent and then spread upon a medium—usually blotter paper, gelatin, or a sugar cube. This inactive carrier medium typically far outweighs the LSD itself; thus, there exists the potential for wide variances in sentencing based upon nothing more than the happenstance weight of the particular carrier chosen by a given defendant.

In *Chapman v. United States*, 500 U.S. 453, 468, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991), the Supreme Court held that the term "mixture or substance" present in 21 U.S.C. § 841(b)(1) includes the entire weight of the carrier medium.[2] The district court

2. The *Chapman* Court answered concerns of possible unfairness that may result where variations in the weight of the inert carrier medium cause otherwise similarly situated defendants to receive different sentences by stating:

 Although LSD is not sold by weight, but by dose, and a carrier medium is not, strictly speaking, used to "dilute" the drug, that medium is used to facilitate the distribution of the drug. Blotter paper makes LSD easier to transport, store, conceal, and sell. It is a tool of the trade for those who traffic in the drug, and therefore it was rational for Congress to set penalties based on this chosen tool.

 *Chapman*, 500 U.S. at 466, 111 S.Ct. at 1928.

relied upon *Chapman* to calculate the weight of LSD involved in this case. With the entire weight of the carrier medium thus included, the amount of LSD involved was determined to be 101 grams—well over the ten gram benchmark required for the imposition of the ten year mandatory minimum sentence established by 21 U.S.C. § 841(b)(1)(A). In light of Muschik's prior state felony drug conviction, the district court followed § 841(b)(1)(A) and doubled the mandatory minimum sentence to twenty years.

## B.

Muschik does not contest the holding of *Chapman* directly, but instead contends that the November 1, 1993 amendment to § 2D1.1(c) of the Sentencing Guidelines compels a recalculation of the weight of the LSD as the amendment postdates both the *Chapman* decision and the Ninth Circuit's remand for resentencing. Since there is no *ex post facto* clause problem involved here, as Muschik is certainly not disadvantaged by the amendment, the Guidelines that are in effect upon Muschik's resentencing must be applied. *United States v. Fagan*, 996 F.2d 1009, 1018 (9th Cir.1993). The question presented here concerns the actual nature of the changes wrought by the amendment to § 2D1.1(c) and the relation of that amendment to *Chapman* and the mandatory minimum statutes.

## III.

We begin by noting that this precise issue has already been addressed, with differing results, by several other circuits. We find the reasoning of the Eighth Circuit as expressed in *United States v. Stoneking*, 34 F.3d 651 (8th Cir.1994), a late case not cited to us by the parties, persuasive and herein adopt it for our own.[3] Nor did the district court have the benefit of this late case. We reject the contrary result reached by the Seventh, Fifth, Tenth and First Circuits. *See United States v. Neal*, 46 F.3d 1405 (7th Cir.1995) (en banc); *United States v. Pardue*, 36 F.3d 429 (5th Cir.1994); *United States v. Mueller*, 27 F.3d 494 (10th Cir.1994); *United States v. Boot*, 25 F.3d 52 (1st Cir.1994).

### A.

■ As an initial matter, it is clear that where a statute and a Guideline conflict, the statute controls.[4] Therefore, to grant full effect to Amendment 488, we must find that the amendment does not conflict with the mandatory minimum provisions at issue here. Our review of the amendment, the relevant provisions of the statute, and the policy considerations behind each leads us to conclude that Amendment 488 and the statute do not conflict.

■ As discussed above, the Supreme Court in *Chapman* held that the term "mixture or substance" found in 21 U.S.C. § 841(b)(1) "requires the weight of the carrier medium to be included when determining the appropriate sentence for trafficking in LSD." *Chapman*, 500 U.S. at 468, 111 S.Ct. at 1929. At the time *Chapman* was decided, however, neither the Sentencing Guidelines nor § 841(b)(1) defined the words "mixture" or "substance." Therefore, the Supreme Court utilized dictionary-supplied definitions.[5] The Supreme Court determined that blotter paper fell within its definition of "mixture or substance" because "[t]he LSD crys-

3. The Eighth Circuit subsequently vacated the *Stoneking* opinion and granted an en banc rehearing. As of the date of our decision in this case, the en banc *Stoneking* opinion has not yet been issued. Regardless of the Eighth Circuit's eventual decision in this case, we remain impressed by the reasoning expressed in the original opinion.

4. *See, e.g.,* U.S.S.G. § 5G1.1(b) (1993) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

5. The Supreme Court found:

> A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." ... A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other.

> *Id.* at 462, 111 S.Ct. at 1926 (citations omitted).

tals are inside of the paper, so that they are commingled with it, but the LSD does not chemically combine with the paper. Thus, it retains a separate existence ... The LSD is diffused among the fibers of the paper." *Id.* at 462, 111 S.Ct. at 1926.

One important factor behind the *Chapman* decision was that the Supreme Court was there presented with only two choices: utilize the negligible net weight of the pure LSD or utilize the gross weight of the pure LSD together with its carrier medium. "Faced with that choice, the Court could only choose the gross weight, in keeping with the fact that the weights of other drugs include dilutants and cutting agents, and in keeping with the market-oriented approach adopted by the Guidelines." *Stoneking,* 34 F.3d at 654; *see also Neal,* 46 F.3d at 1414–15 (Ripple, J., dissenting). The advent of Amendment 488 presents a third option: A court may now utilize an assigned rational weight for the calculation of sentences.

It is our belief that the assignment of a uniform and rational weight to LSD on a carrier medium does not conflict with *Chapman.* In fact, the background commentary to § 2D1.1, as amended by Amendment 488, expressly states that "this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b))." Rather than "overriding" *Chapman's* interpretation of "mixture or substance," the formula set forth in Amendment 488 merely standardizes the amount of carrier medium that can be properly viewed as "mixed" with the pure drug.

*Chapman* held that it was rational to include the weight of the carrier medium for sentencing purposes since that medium facili-

tates the transportation, storage, concealment, and sale of the drug. *Chapman,* 500 U.S. at 466, 111 S.Ct. at 1928. Amendment 488 accounts for this facilitation by selecting a standard dosage weight eight times the actual weight of the pure LSD [6] which simultaneously eliminates the potential for undue sentencing disparities,[7] the existence of which even the *Chapman* Court acknowledged. *See Chapman,* 500 U.S. at 466, 111 S.Ct. at 1928. As the Eighth Circuit found,

> [b]y assigning a sentencing weight per dose that is eight times the actual weight of the pure drug, the Sentencing Commission has determined, in effect, that .05 mg of LSD can be absorbed in, or chemically bonded with, a carrier eight times its weight. Thus, Amendment 488 remains true to the *Chapman* mandate that the weight of the carrier must be included if the carrier can be said to be bonded with or mixed with the drug.

*Stoneking,* 34 F.3d at 654 (footnote omitted). The framework of *Chapman* thus remains intact while the theoretical foundation upon which it sits is strengthened.

## B.

Amendment 488 also leaves intact another concern behind the *Chapman* decision, the maintenance of a "market-oriented" approach to drug sentencing. This approach looks to "the total quantity of what is distributed, rather than the amount of pure drug involved ... to determine the length of the sentence." *Chapman,* 500 U.S. at 461, 111 S.Ct. at 1925. (citation omitted). Standardizing the weight value of LSD furthers this market-oriented approach because LSD, unlike most other drugs, is not sold by weight but by dose.

---

**6.** The background commentary to U.S.S.G. § 2D1.1, as amended by Amendment 488, makes clear the Sentencing Commission's intent to perpetuate the rationale behind *Chapman:*

> The dosage weight of LSD selected exceeds the [DEA]'s standard dosage unit for LSD of 0.05 milligram (i.e., the quantity of actual LSD per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes ... the decision in *Chapman v. United States,* [500

U.S. 453], 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (holding that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed).

**7.** For example, before Amendment 488 took effect, a drug trafficker would receive the mandatory minimum sentence of five years for one gram or more of LSD under 21 U.S.C. § 841(b)(1)(B) by selling either 1/2 of a sugar cube dose, 72 blotter paper doses, or 445 gelatin capsule doses. *See Chapman,* 500 U.S. at 458 n. 2, 111 S.Ct. at 1924.

The price of a dose of LSD is set without any regard to the weight of carrier medium. Amendment 488 thus furthers the market-oriented approach by hinging sentencing upon the number of doses sold, rather than upon the type of medium that happens to be involved. By setting a weight figure eight times higher than the pure drug, the amendment remains true to *Chapman* by sufficiently recognizing retail realities and adequately punishing retail traffickers.

### C.

The Sentencing Commission also intended for Amendment 488 to correct the pre-amendment situation wherein LSD sentences were disproportionate to those sentences imposed for other, more dangerous substances, such as phencyclidine ("PCP").

[T]he weight per dose selected is less than the weight per dose that would equate the offense level for LSD on a carrier medium with that for the same number of doses of PCP, a controlled substance that comparative assessments indicate is more likely to induce violent acts and ancillary crime than is LSD. (Treating LSD on a carrier medium as weighing 0.5 milligram per dose would produce offense levels equivalent to those for PCP.) Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled substances ...

U.S.S.G. § 2D1.1, comment. (backg'd) (1993) (as amended by Amendment 488).

### IV.

After Amendment 488 was sent to Congress for review, it took effect without modification or delay, and thus with congressional approval, on November 1, 1993. Such a refinement of the sentencing scheme through the action of the Commission, with the knowledge and consent of Congress, is an expected and necessary element of the process contemplated by the present sentencing system. As the Supreme Court has noted, "in charging the Commission 'periodically [to] review and revise' the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States,* 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991) (quoting 28 U.S.C. § 994(*o*)). The Commission performed its congressionally delegated role by amending § 2D1.1 in light of *Chapman.* Congress did not challenge the revision. We should not assume that Congress has made conflicting policy decisions regarding LSD weight in the areas of mandatory minimum and Guideline sentencing when those decisions may be so easily harmonized. "The judiciary has an obligation to presume that those who sit in the Congress intend' that the country be governed by a sentencing system that, although composed of both mandatory minimum sentences and the guideline ranges, operates as an integrated and fair system of criminal justice." *Neal,* 46 F.3d at 1411. (Ripple, J., dissenting).

Those Circuits which reached the opposite result on this issue did so, in our view, after misinterpreting the statement in the amended background commentary that "[n]onetheless, this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence." *See, e.g., Neal,* 46 F.3d at 1408–09; *Pardue,* 36 F.3d at 431; *Boot,* 25 F.3d at 55. As we have endeavored to demonstrate, there is much more to Amendment 488 than this single sentence. Read as a whole, the amended background commentary demonstrates the intent of the Sentencing Commission to lessen the "undue influence" that different carrier weights have on the offense level and to harmonize offense levels for different controlled substances while taking into account *Chapman's* interpretation of the term "mixture or substance."

The Commission intended to leave *Chapman* intact—through the amendment, the Commission merely intended to standardize the amount of carrier medium that can be viewed as "mixed" with LSD. As discussed in the amended background commentary, the Commission selected a weight value eight times the actual weight of the pure LSD in an express effort to recognize the impact of *Chapman* on weight calculation. The conclusion reached by the other Circuits results in

a dual system of calculating LSD weight— one rule for calculations under the Sentencing Guidelines and another rule for the mandatory minimum statutes. We decline to find that the Commission, whose mission it is to promote uniformity and fairness in sentencing, effectuated such a nonuniform and unfair result.

## V.

By giving effect to Amendment 488 as written, we advance the basic objectives Congress sought to achieve in providing for the development of the Sentencing Guidelines, namely the creation of an effective, fair, and uniform sentencing system. The United States Probation Office recalculated the weight of Muschik's LSD utilizing the standard set forth in the amendment and arrived at a total of 5.68 grams. As this revised figure is more than one gram but less than ten grams, Muschik's mandatory minimum sentence will drop to ten years under 21 U.S.C. § 841(b)(1)(B) when coupled with Muschik's prior state felony drug conviction.

We have also considered the other arguments advanced by appellant and found them to be without merit.

## VI.

### CONCLUSION

For the reasons set forth above, we VACATE the sentence imposed by the district court and REMAND for resentencing in accordance with this opinion.