United States Court of Appeals,

Eleventh Circuit.

No. 94-2029.

UNITED STATES of America, Plaintiff-Appellant,

v.

Michael Stanley POPE, Jr., Defendant-Appellee.

July 26, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-280-CR-T-22(A)), Anne C. Conway, Judge.

Before DUBINA and BLACK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

The United States appeals from the judgment of the United States District Court for the Middle District of Florida granting Michael Stanley Pope, Jr.'s motion to modify his term of imprisonment. For the reasons stated below, we reverse and remand.

## I. BACKGROUND

On January 23, 1992, Pope pleaded guilty pursuant to a written plea agreement to charges of conspiracy to possess with intent to distribute (Count One), and possession with intent to distribute (Count Two), more than ten grams of lysergic acid diethylamide ("LSD"), in violation of 21 U.S.C. §§ 841(a)(1) and 846. According to the stipulated facts contained in the plea agreement, the charges involved the sale of 1,200 doses of the drug, which, when the carrier medium (blotter paper) was counted, weighed 14.4 grams. Based upon 21 U.S.C. § 841(b)(1)(A)(v) (governing violations involving "10 grams or more of a mixture or substance containing a detectable amount of ... (LSD)"), and the Supreme Court's decision

in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (for purposes of § 841(b)(1)(A)(v), the term "mixture or substance" means the entire weight of the carrier medium), Pope was subject to a minimum, mandatory, ten-year term of imprisonment.[1]  At Pope's sentencing, and in accordance with the plea agreement, the government moved for a downward departure as permitted by 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.[2]  Guided by the government's recommendation with respect to the extent of the departure warranted, the court sentenced Pope to 78 months in prison to be followed by 60 months of supervised release.[3]

Effective November 1, 1993, the United States Sentencing Commission (Commission) amended the guideline and the explanatory commentary governing sentences for LSD offenses.  The new guideline directs that, "[i]n the case of LSD on a carrier medium (*e.g.,* a

---

[1]As they do now, at the time of Pope's sentencing on April 30, 1992, the Sentencing Guidelines provided that "[u]nless otherwise specified, the weight of a controlled substance ... refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) n.* (1992).  Under the guidelines, Pope's base offense level was 32.  *See* U.S.S.G. § 2D1.1(a)(3), (c)(6) (1992).  The government recommended and the court adopted a two-level reduction for acceptance of responsibility, which resulted in an adjusted offense level of 30.  With a criminal history category of I, Pope was subject to a guidelines range of 97 to 121 months' imprisonment.  However, because of the statutorily mandated minimum of ten years, Pope's guidelines range became 120 to 121 months.  *See* U.S.S.G. § 5G1.1 (1992).

[2]Both the statute and the guideline authorize the court, upon motion of the government, to impose a sentence below the statutory minimum to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

[3]The government advised the court that Pope's assistance merited another two-level reduction in his offense level, bringing it down to 28.  The guidelines range based on this offense level was 78 to 97 months.

sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table." U.S.S.G. § 2D1.1(c) n.* (1993) (Amendment 488). Calculated under the amended guideline, the weight of the LSD involved in Pope's offenses was 480 milligrams. On November 10, 1993, Pope petitioned the district court to exercise its discretion, as permitted by 18 U.S.C. § 3582(c)(2), to reduce his term of imprisonment to reflect the lower sentencing range resulting from the amended guideline.[4] Pope requested specifically that the court resentence him predicated on a guidelines offense level of 16, which produced a range of 21 to 27 months. [5] The district court granted Pope's motion over the government's written opposition and modified his term of imprisonment to 21 months, followed by 36 months of supervised release.

## II. DISCUSSION

On appeal, the government maintains that the district court was without authority to modify Pope's sentence on the basis of the amended guideline because *Chapman* 's entire weight rule still

---

[4]A defendant's sentence may be reduced under § 3582(c)(2) when the guidelines range has subsequently been lowered by the Commission and mitigation is consistent with the applicable policy statements. The policy statement governing Amendment 488 provides for its retroactive application. *See* U.S.S.G. § 1B1.10(a), (d) (1993).

[5]The offense level for an LSD offense involving 480 milligrams is 20. U.S.S.G. § 2D1.1(a)(3), (c)(12) (1993). We presume that Pope's request was grounded upon that base offense level, reduced further by the four-level reduction he received earlier for acceptance of responsibility and substantial assistance to the government. We note that under the statutory scheme, there is no mandatory, minimum sentence for an LSD offense involving 480 milligrams. *See* 21 U.S.C. § 841(b)(1)(C).

governs for purposes of calculating the mandatory, minimum sentence under 21 U.S.C. § 841(b)(1)(A)(v), and the ten-year statutory minimum replaced the guidelines range of imprisonment. *See* U.S.S.G. § 5G1.1(b) (where the statutorily required minimum sentence is greater than the maximum of the guidelines range, the statutory minimum becomes the guidelines sentence).[6] Pope urges us to hold that the amendment comports with *Chapman* because it assigns some weight to the mixture or substance containing the LSD.

Our review of the application of the law to sentencing issues is *de novo. United States v. Chavarria-Herrara,*15 F.3d 1033, 1036 (11th Cir.1994). Whether Amendment 488 changed the method by which to calculate the weight of LSD for purposes of the statutory sentencing scheme, or whether the *Chapman* interpretation of the term "mixture or substance" as stated in the statute still controls, is a topic our circuit has not yet addressed in a published opinion and one which has divided our sister circuit courts.[7] *See United States v. Smith,* 39 F.3d 1143, 1146 n. 2 (11th

---

[6]The government also contends that, although the original downward departure Pope received for substantial assistance was proper under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the modification to his sentence cannot be justified as a further downward departure guided by the amendment. Pope did not base his request for modification upon the downward departure provisions, and it is clear from the record that the district court did not rely on such reasoning in reducing his term of imprisonment. We therefore confine our inquiry to the sole issue considered by the district court, that is, whether Amendment 488 affects the calculation of weight in LSD offenses for purposes of determining whether a defendant is subject to a mandatory, minimum sentence under 21 U.S.C. § 841(b)(1).

[7]To date, the First, Third, Fifth, Sixth, Seventh and Tenth Circuit Courts have continued to follow *Chapman. See United States v. Andress,* 47 F.3d 839 (6th Cir.1995); *United States v. Hanlin,* 48 F.3d 121 (3d Cir.1995); *United States v. Neal,* 46 F.3d 1405 (7th Cir.) (en banc), *cert. granted,* 63 U.S.L.W. 3889,

Cir.1994). After we heard oral argument in this case, another panel of the Eleventh Circuit issued an unpublished, per curiam opinion, in which the court held that *Chapman* continues to govern the determination of a mandatory, minimum sentence prescribed by 21 U.S.C. § 841(b)(1). *See United States v. Reigle,* 53 F.3d 1284 (11th Cir.1995). Although unpublished opinions are not binding on another panel of our court, we may consider them as persuasive authority. *See* 11th Cir.R. 36-2. In light of *Reigle,* and the fact that the majority rule among the circuit courts is that Amendment 488 does not affect *Chapman* 's applicability to the statutory analysis, we now follow suit.

Contrary to Pope's contention, the amended guideline cannot be squared completely with *Chapman.* Simply stated, in *Chapman,* the Court directed that "the *entire* mixture or substance [containing the LSD] is to be weighed when calculating the sentence." *Chapman,* 500 U.S. at 459, 111 S.Ct. at 1924, 114 L.Ed.2d at 534 (emphasis added). The amendment to the Sentencing Guidelines dictates that only part of the carrier medium may be counted at the time sentence is imposed and it assigns a uniform weight to each dosage of the drug without regard to the identity of the medium.[8] Thus, the

---

--- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (U.S. June 19, 1995) (No. 94-9088); *United States v. Pardue,* 36 F.3d 429 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *United States v. Mueller,* 27 F.3d 494 (10th Cir.1994); *United States v. Boot,* 25 F.3d 52 (1st Cir.1994). The Eighth and Ninth Circuits have held that the standardized weight supplied by the amendment should be utilized. *See United States v. Muschik,* 49 F.3d 512 (9th Cir.1995); *United States v. Stoneking,* 34 F.3d 651 (8th Cir.), *vacated and reh'g granted en banc,* (Sept. 16, 1994).

[8]The standard weight assigned to the carrier medium by the amendment is 0.35 milligram, which is the difference between 0.4

amendment cannot be reconciled with *Chapman* in that *Chapman* requires that the entire, actual weight of the carrier medium, whatever its composition, be taken into account.

Central to the question before us is the issue of whether the Commission may, by amending the guidelines, change the manner in which a court or Congress has directed the calculation of a statutorily required sentence. At oral argument the government maintained that the Commission has no such power. However, in *United States v. Munoz-Realpe,* 21 F.3d 375 (11th Cir.1994), a panel of this court rejected a similar argument in the context of the statutory and guidelines formulas governing penalties for cocaine offenses.

In *Munoz-Realpe,* the defendant was convicted of importing cocaine, in violation of 21 U.S.C. § 952(a). The question on appeal was whether the substance the defendant imported, a liquid that tested positive for cocaine base, should be treated as cocaine base or cocaine hydrochloride for purposes of sentencing. In an earlier case, *United States v. Rodriguez,* 980 F.2d 1375 (11th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993), the court held that the term "cocaine base" as employed in 21 U.S.C. § 960(b) (providing mandatory, minimum sentences for importing various drugs, depending upon weight), as well as U.S.S.G. § 2D1.1 (setting offense levels for drug crimes), encompassed all forms of cocaine base and not just cocaine base which had been processed into "crack." *Id.* at 1378. After

---

milligram and 0.05 milligram, the typical weight per dose of pure LSD according to Drug Enforcement Administration figures. U.S.S.G. § 2D1.1, comment. (backg'd.) (1993) (Amendment 488).

*Rodriguez* was decided, the Commission amended U.S.S.G. § 2D1.1(c) n.* to include a statement following the drug quantity table which provided that, " "[c]ocaine base,' for the purposes of this guideline, means "crack.' "Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." If the statutory penalty governing cocaine base had been applied to the substance at issue in *Munoz-Realpe,* the defendant would have been subject to a mandatory, minimum sentence of ten years under 21 U.S.C. § 960(b). However, because it was not "crack," the district court sentenced him according to the more lenient provisions governing cocaine hydrochloride.

On appeal, the government argued that in spite of the amendment to U.S.S.G. § 2D1.1(c) n.*, *Rodriguez* was still binding precedent on the issue of whether the term "cocaine base," as used in the mandatory, minimum sentencing provisions of 21 U.S.C. § 960(b), included all forms of cocaine base and not just crack cocaine. The panel disagreed, explaining:

> We believe that the precedential force of our *Rodriguez* ruling has been eroded by subsequent Congressional action. When the Sentencing Commission proposes an amendment to the Guidelines themselves (as opposed to commentary or other explanatory matter), the amendment is first submitted to Congress, which may act to disapprove or change the proposed amendment within a specified time (at least 180 days). If Congress takes no action, the amendment becomes effective. By allowing the amendment to take effect, Congress has given its imprimatur to the new definition of "cocaine base"; Congress indicated that it intends the term "cocaine base" to include only crack cocaine. Because Congress has provided this new definition, we think it is proper for us to look to the Guidelines in determining the meaning of "cocaine base" in the mandatory minimum statute, especially since both provisions seek to address the same problem. There is no reason for us to assume that Congress meant for "cocaine base" to have more than one definition.

*Munoz-Realpe,* 21 F.3d at 377-78 (citations omitted).

Also, in *Stinson v. United States,* 508 U.S. ----, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), the Supreme Court reiterated that " "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases.' " *Id.* at ----, 113 S.Ct. at 1917, 123 L.Ed.2d at 606 (quoting *Mistretta v. United States,* 488 U.S. 361, 391, 109 S.Ct. 647, 665, 102 L.Ed.2d 714, 743 (1989)). The issue in *Stinson* was whether an amendment to the commentary accompanying a guideline was equally binding. A panel of the Eleventh Circuit had previously determined that the commentary was only persuasive authority. *See United States v. Stinson,* 957 F.2d 813, 815 (11th Cir.1992), *vacated,* 508 U.S. at ----, 113 S.Ct. at 1920, 123 L.Ed.2d at 610. The Supreme Court held, however, that commentary which interprets or explains a guideline must be followed by the courts as well, "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson,* 508 U.S. at ----, 113 S.Ct. at 1915, 123 L.Ed.2d at 603. Thus, the Court made it clear that commentary to a guideline which comports with constitutional and statutory concerns, is also binding unless it conflicts with the guideline itself, in which case the guideline controls.

With respect to LSD offenses, both the guideline and the commentary to the guideline were amended. We have already discussed the amendment to the guideline at U.S.S.G. § 2D1.1(c) n.*. The added commentary explaining the amendment states:

> Because the weights of LSD carrier media vary widely and
> typically far exceed the weight of the controlled substance

itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level.

The dosage weight of LSD selected exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05 milligram (*i.e.,* the quantity of actual LSD per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in *Chapman v. United States,* [500 U.S. 453], 111 S.Ct. 1919 [114 L.Ed.2d 524] (1991) (holding that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed). At the same time, the weight per dose selected is less than the weight per dose that would equate the offense level for LSD on a carrier medium with that for the same number of doses of PCP, a controlled substance that comparative assessments indicate is more likely to induce violent acts and ancillary crime than is LSD. (Treating LSD on a carrier medium as weighing 0.5 milligram per dose would produce offense levels equivalent to those for PCP.) Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled substances and avoid an undue influence of varied carrier weight on the applicable offense level. *Nonetheless, this approach does not override the applicability of "mixture or substance" for the purpose of applying any mandatory minimum sentence (see Chapman;  § 5G1.1(b)).*

U.S.S.G. § 2D1.1, comment. (backg'd.) (1993) (Amendment 488) (emphasis added).

Several of the circuit courts (including our own, in *Reigle* ), which have held that Amendment 488 does not override the entire weight definition of "mixture or substance" announced in *Chapman,* have focused on the last sentence of the above-quoted commentary to find that the Commission did not intend for the amendment to alter

the manner in which weight is calculated under the statutory scheme. *See, e.g., United States v. Andress,* 47 F.3d 839, 840-41 (6th Cir.1995); *United States v. Pardue,* 36 F.3d 429, 431 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995). Other courts have held that the amendment did change the method of weight calculation for purposes of the mandatory, minimum statute, but in a way which does not conflict with *Chapman. See United States v. Muschik,* 49 F.3d 512 (9th Cir.1995); *accord United States v. Stoneking,* 34 F.3d 651 (8th Cir.), *vacated and reh'g granted en banc,* (Sept. 16, 1994). These courts have construed the commentary as Pope urges us to do, that is, as evidencing an intent by the Commission to comply with the statutory mandate that the "mixture or substance" containing the LSD be counted at sentencing, as well as *Chapman* 's holding that a carrier medium such as blotter paper is a "mixture or substance" for purposes of the statute. *Muschik,* 49 F.3d at 515-17; *Stoneking,* 34 F.3d at 653-54.

Without question, the method by which courts must determine Sentencing Guidelines ranges of punishment for LSD offenses has been recast by Amendment 488. Although the meaning of the amended commentary is debateable, the amended guideline plainly sets forth a standard, uniform weight for the mixture or substance containing the LSD, and under *Stinson,* the guideline is controlling. *See Stinson,* 508 U.S. at ----, 113 S.Ct. at 1918, 123 L.Ed.2d at 607 (if the commentary and the guideline it interprets are inconsistent, the Sentencing Reform Act commands compliance with the guideline). What is not clear is whether the Commission

intended to construct a new method for measuring LSD offenses under the guidelines, while leaving intact *Chapman* 's entire weight approach for purposes of the statutory analysis.

In view of the last sentence of the commentary and this court's opinion in *Reigle,* we feel constrained to hold that the entire weight rule of *Chapman* must still be followed for purposes of determining whether a defendant is subject to the mandatory, minimum sentence called for in 21 U.S.C. § 841(b)(1). While this outcome may be difficult to reconcile with the reasoning expressed in *Munoz-Realpe,* we feel that the factual differences in the two cases preponderate in favor of the government's position.

### III. CONCLUSION

In accordance with the foregoing reasons, we REVERSE the modification of Pope's sentence on the basis of Amendment 488 and REMAND the case to the district court with instructions to reinstate his previously imposed sentence.